The **CHRISTIAN SCIENCE BOARD OF DIRECTORS OF THE FIRST CHURCH OF CHRIST, SCIENTIST;** and **The Christian Science Publishing Society,** Plaintiffs,

v.

David E. **ROBINSON;** The Roan Mountain Institute of Christian Science & Health; David J. Nolan; and University of Christian Science, Defendants.

No. Civ.1:99CV148.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 6, 2000.

Catharine B. Arrowood, Brian D. Darer, Parker, Poe, Adams & Bernstein, Raleigh, NC, Joseph H. Lessem, Cowan, Liebowitz & Latman, P.C., New York City, for The Christian Science Board of Directors of the First Church of Christ, Scientist, The

Christian Science Publishing Society, plaintiffs.

David E. Robinson, Bakersville, NC, defendant pro se.

John H. Hasty, John Watson Bowers, Waggoner, Hamrick, Hasty, Monteith & Kratt, PLLC, Charlotte, NC, Brenda A. Buan, Morris M. Goldings, Mahoney, Hawkes & Goldings, LLP, Boston, MA, for David J. Nolan, University of Christian Science, defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the following motions:

1. *Defendant David Robinson's (Robinson) motions for summary judgment;
2. Plaintiffs'.[1] motion to file a brief in excess of 25 pages;
3. Plaintiffs' motion for summary judgment against Defendants Robinson and The Roan Mountain Institute of Christian Science and Health (Roan Mountain) or, in the alternative, for judgment on the pleadings;
4. Plaintiffs' motion for default judgment against Defendants David J. Nolan and The University of Christian Science (the Nolan Defendants);
5. *A motion to postpone judgment by Defendants Robinson and Roan Mountain;
6. *A motion to submit a videocassette exhibit by Defendants Robinson and Roan Mountain;
7. *Defendants' motion to shorten the time for a hearing on the motion to compel;
8. *Defendants' motion for default judgment;
9. *Defendants' motion for an interim ruling of law;
10. *Defendant Robinson's motion to withdraw his motion for summary judgment;
11. *Defendants' motion to compel answers to admissions;
12. *Defendants' motion to compel answers to interrogatories;
13. *Defendant Robinson's motion to amend;
14. *Defendants' motion to dismiss;
15. *Defendants' motion to show cause;
16. *Defendants' motion to compel;
17. *Defendants' motion to consider facts; and
18. Defendant Robinson's objections to the Memorandum and Recommendation.

Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred some of the above motions to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review to those portions of the recommendation to which specific objections were filed, the recommendation is adopted. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

Those motions which are highlighted by an asterisk are subject to summary disposition. Robinson and Roan Mountain moved to postpone any ruling on the Plaintiffs' motion for summary judgment until the Plaintiffs answered interrogatories. However, no reason was given why such discovery was necessary to withstand summary judgment; thus, the motion is denied. **Evans v. Technologies Applications & Serv. Co.,** 80 F.3d 954, 961 (4th Cir.1996).

The remaining highlighted motions are dismissed as frivolous for reasons set forth below. Defendants Robinson and Roan Mountain's motion to submit a copy of a video as an exhibit is denied. This file is replete with unnecessary and frivolous filings which have burdened every aspect of the judicial system.

Plaintiffs' motion for entry of default judgment against the Nolan Defendants is granted. Those Defendants have been

1. Plaintiffs The Christian Science Board of Directors of the First Church of Christ, Scientist and The Christian Science Publishing Society are collectively referred to as Plaintiffs.

properly served and have made no appearance in the action.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving parties, here the Defendants. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the Plaintiffs as the moving parties have the initial burden to show a lack of evidence to support Plaintiff's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the Defendants who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Defendants]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Defendants, as the nonmoving parties. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. FINDINGS OF FACT

The Christian Science Publishing Society (Society) is controlled and operated by the Board of Directors of The First Church of Christ, Scientist (Board). The Society publishes a variety of publications and through the years, the Board and the Society have acquired numerous trademarks which have been registered in the United States Patent and Trademark Office. In addition, the Board claims the term "Christian Science" has become a common law trademark due to its distinction and association by the public with its origin.

Defendants do not deny that they have used Plaintiffs' marks in connection with their own products and on the Internet. Instead, Defendants argue that the common law mark is generic and therefore may be used. Defendants' counterclaims raise issues relating to the management and historical development of The First Church of Christ, Scientist (Church). Robinson claims the original Board made misrepresentations concerning ownership of real estate and thereafter, took illegal actions to obtain control of the Church. Indeed, Robinson's counterclaims seek judicial intervention into the manner in which the Church itself is organized and operated. Finally, Robinson contends that he previously brought an action to determine the ownership and control of the Church in the Supreme Court of the Dominion of Melchizedek in 1998 where he obtained a default judgment against the Church.[2] Thus, he claims *res judicata* precludes this action.

## III. DISCUSSION

Robinson has not filed objections to that portion of the Memorandum and Recommendation which acknowledges Plaintiffs' registered trademarks. However, he objects to the Magistrate Judge's recommendations that the term "Christian Science" is not generic, the alleged default judgment may not be recognized and the counterclaims should be dismissed.

Christian Science is a religion founded by Mary Baker Eddy in 1866. As the religion grew, there developed an organizational structure. In 1879 The Church of Christ, Scientist, was founded in Lynn, Massachusetts. From 1881 until 1889 Mrs. Eddy was principal of the Massachusetts Metaphysical College,

---

**2.** Melchizedek was a priest-king in the Old Testament book of Genesis and in the Mormon Church refers to a higher order of priesthood. **Webster's** *Third New International Dictionary* **(1981).**

which was replaced by the First Church of Christ, Scientist (the "Mother Church"), established in 1889 and relocated in Boston, Massachusetts in 1892. Plaintiff Board of Directors is a Massachusetts corporation that conducts the business of the Mother Church. The Church has a separate publishing arm, governed by the plaintiff Board of Trustees.

The Mother Church, which is the center of a world-wide religious organization, bears the formal name "The First Church of Christ, Scientist." Local members of the organization consist of branch churches or societies, the difference between the two being primarily a matter of size. Branch churches are formally designated "First Church of Christ, Scientist," followed by a geographical designation, unless they are the second or third branch within one city, in which case the numerical designation changes. These names are prescribed by the Church Manual....

*Christian Science Bd. of Directors of the First Church of Christ, Scientist v. Evans,* 105 N.J. 297, 300, 520 A.2d 1347, 1349 (1987) (citations omitted).

Although the term "Christian Science" is not a registered mark, Plaintiffs "may still seek protection under the Lanham Act, which also protects unregistered marks." *Ale House Management, Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 140 (4th Cir.2000).

If a parent religious society remains true to the tenets of the religion, it is entitled to protection against a minority's use of the same name. For example, a preliminary injunction can be obtained by the mother church against a local which is disaffiliated because it stops paying fees (tithes) to the mother church. Without a preliminary injunction, the mother church's reputation would be outside its control because the local can no longer be relied upon to be true to the mother church's teachings.... [For example] the Trademark Board held that SEVENTH DAY ADVENTIST was not a generic name for a

type or category of religion, did identify the Mother Church as the source of products and services, and was registerable for religious publications.

1 *McCarthy on Trademarks,* § 9:7 (4th ed.2000).

■ Robinson relies on the *Evans* case, *supra,* to support his claim that the term "Christian Science" is a generic term incapable of trademark protection. The case is distinguishable from that at hand. In *Evans,* the New Jersey Supreme Court found the defendant's name sufficiently different to distinguish it from the Mother Church. Indeed, this Court is bound by the valid Fourth Circuit precedent stated in *Purcell v. Summers,* 145 F.2d 979 (4th Cir.1944). There, three branches of the Methodist Church joined to become The Methodist Church for the United Church. However, a dissident group seceded and attempting to reestablish one of the former branches, The Methodist Episcopal Church, South, began using that name. The Methodist Church brought litigation to enjoin the use of the name The Methodist Episcopal Church, South.

The right to use the name inheres in the institution, not in its members; and, when they cease to be members of the institution, use by them of the name is misleading and, if injurious to the institution, should be enjoined. No question of religious liberty is involved. Men have the right to worship God according to the dictates of conscience; but they have no right in doing so to make use of a name which will enable them to appropriate the good will which has been built up by an organization with which they are no longer connected....

It is said that the words 'Methodist' and 'Episcopal' are generic terms and that defendants have the right to use them for that reason, but defendants are not proposing to use either of these words in a new name so different from the old that no confusion could result.... [T]he question is, not whether they have the right to use 'Methodist' or 'Episcopal' in

a new name so constructed as to avoid confusion, but whether they have the right to use the old name in a way that amounts, as we think it does, to implied misrepresentation to the damage of plaintiffs.

*Id.*, at 987–88. This is precisely the case at hand; and, as the Fourth Circuit noted, Defendants "have the right to withdraw from the church and form a new organization, calling it by any name that will not lead to confusion or enable it to appropriate the standing and good will of the [Mother Church]; but they have no right to use the name of the organization ... and thus hold themselves out to the community as a continuation of or as connected with that organization." *Id.*, at 991.

[F]or a period of over [100] years, the primary significance of the designation "[Christian Science]" has been to identify the source or origin of religious publications and services emanating from [Plaintiffs]. [The evidence] indicate[s] that "[Christian Science]" is used and recognized as a source indicator for [Plaintiffs'] goods and services. [Plaintiffs are] engaged in wide-ranging activities, including its administration of churches, schools, hospitals, and colleges.... [T]he primary significance of [Christian Science] to [the public] is as an indicator of the source or origin of [Plaintiffs'] various goods and/or services. [T]he term indicates products and/or services of a single source [ ] and, therefore, the term functions as a trademark/servicemark. That a particular church publishes books and renders services with recognizable characteristics of the religion guiding the church does not convert the designation of source to a common or generic name.

*Stocker v. General Conference Corp. of Seventh–Day Adventists*, 39 U.S.P.Q.2d 1385, 1398, 1996 WL 427638 (1996).

▇ Robinson also objects to the Magistrate Judge's refusal to recognize a default judgment purportedly obtained in the Supreme Court of the Dominion of Melchizedek. David Korem established this "country" on the Internet; indeed, it has no physical location other than a submerged island in the South Pacific. **Exhibit 1, *attached to* Plaintiffs' Memorandum in Opposition to Defendants' Objections.** The "country" sells licenses to banks and other financial institutions and has been the subject of numerous and on-going fraud investigations. *Id.* It goes without saying that the Magistrate Judge was correct.

Finally, Robinson's counterclaims involve issues relating to the internal administration and organization of the Church. These are matters as to which courts are prohibited by the Constitution. *See, Purcell, supra.*

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for default judgment against the Nolan Defendants is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for summary judgment is hereby **GRANTED.** A Judgment imposing a permanent injunction is filed herewith.

**IT IS FURTHER ORDERED** that the following motions are hereby **DISMISSED** as frivolous:

1. Defendant Robinson's motions for summary judgment;

2. A motion to postpone judgment by Defendants Robinson and Roan Mountain;

3. A motion to submit a videocassette exhibit by Defendants Robinson and Roan Mountain;

4. Defendants' motion to shorten the time for a hearing on the motion to compel;

5. Defendants' motion for default judgment;

6. Defendants' motion for an interim ruling of law;

7. Defendant Robinson's motion to withdraw his motion for summary judgment;

8. Defendants' motion to compel answers to admissions;

9. Defendants' motion to compel answers to interrogatories;

10. Defendant Robinson's motion to modify, suspend or amend rules;

11. Defendants' motion to dismiss;

12. Defendants' motion to show cause;

13. Defendants' motion to compel; and

14. Defendants' motion to consider facts.

**IT IS FURTHER ORDERED** that the Plaintiffs' motion to exceed page limit is denied as moot.

### JUDGMENT

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Defendants David J. Nolan and University of Christian Science are hereby in **DEFAULT.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Defendants, their heirs and assigns, are hereby permanently enjoined and restrained from using the following marks or any marks that are colorable imitations thereof or which are confusingly similar thereto:

1. The federally registered **CROSS AND CROWN** Marks;

2. The federally registered **DOME DESIGN** Marks;

3. *The Christian Science Monitor* Marks, consisting of—

    a. The federally registered **CSM NAME** Marks;

    b. The federally registered **SHEAF OF WHEAT** Marks;

    c. The federally registered **GRAIN QUOTATION** Marks;

    d. The common law **CSM** logo, a design mark consisting of the three foregoing marks on a black rectangular background, and

    e. The common law mark **CSMONITOR** as used in the Plaintiffs' <csmonitor.com> domain name; and

4. The **CHRISTIAN SCIENCE** Family of Marks, comprising—

    a. Nine federal registrations for **CHRISTIAN SCIENCE, CHRISTIAN SCIENCE JOURNAL, CHRISTIAN SCIENCE QUARTERLY, THE HERALD OF CHRISTIAN SCIENCE, THE CHRISTIAN SCIENCE MONITOR,** and **THE CHRISTIAN SCIENCE SENTINEL** for various educational and informational products and services, and

    b. **CHRISTIAN SCIENCE** as a common law trademark for various informational and educational services, such as **CHRISTIAN SCIENCE** Sunday Schools, **CHRISTIAN SCIENCE** Organizations (student organizations at colleges and universities) and CHRISTIAN SCIENCE lectures.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Defendant David E. Robinson, his heirs and assigns, are permanently enjoined and restrained from the use of the domain name <csmonitor.org> and that he immediately transfer such name to the Plaintiffs within 14 days from entry of this Judgment or, in the event of his failure to do so, Network Solutions, Inc., is hereby **ORDERED** to transfer ownership of <csmonitor.org> to the Plaintiffs.